*In re* BOOTH'S ESTATE.

TARDY CLAIM OF COLUMBIA STEEL & SHAFTING COMPANY.

1. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—CONSIDERATION—PRESUMPTIONS.
   Under the negotiable instruments law, every negotiable instrument is deemed prima facie to have been issued for valuable consideration (CL 1948, § 439.26).

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Bills and Notes, § 1002.
[2] 8 Am Jur, Bills and Notes, §§ 1005–1007.
[2] Burden of proof as to consideration for a bill or note, when plaintiff not protected as a holder in due course. 35 ALR 1370; 65 ALR 904; 127 ALR 1003.
[3, 4] 34 Am Jur, Limitation of Actions, § 297.
[4] 34 Am Jur, Limitation of Actions, §§ 299, 300.

2. SAME—CONSIDERATION—PRESUMPTIONS—FAILURE OF CONSIDERA-
TION—EVIDENCE.
   Where there is no proof to overcome the presumption of con-
   sideration for negotiable notes, presented against estate of
   decedent, the defense of failure of consideration is rejected
   (CL 1948, § 439.26).

3. LIMITATION OF ACTIONS—ACKNOWLEDGMENT OF DEBT.
   No set form of words is necessary to constitute a sufficient
   acknowledgment of indebtedness to take a claim out of the
   statute of limitations (CL 1948, § 609.21).

4. SAME—SUBSEQUENT ACKNOWLEDGMENT OF DEBT—IMPLIED PROM-
ISE TO PAY—TOLLING OF STATUTE.
   Where obligor certified the correctness of the statement of ac-
   count and gave officers of the creditor letters of attorney sub-
   sequent to the running of the statute of limitations, the debt
   was thereby acknowledged, an implied promise to pay the ob-
   ligations is presumed and the statute tolled (CL 1948, § 609.-
   21).

5. BILLS AND NOTES—INTEREST ON RENEWALS—USURY.
   Where negotiable notes presented against decedent's estate are
   in the same amounts as notes previously given some 17 and 18
   years previously and draw interest from the respective dates
   of the original notes, the inference is that the later notes
   were renewals of the former and that no interest had been
   paid on the original notes; the fact that the notes drew in-
   terest from a date prior to the date of the notes themselves,
   under such circumstances, not rendering the renewal notes
   usurious.

6. ESTATES OF DECEDENTS—TARDY CLAIM—REFEREE'S FEE.
   Where claimant made a tardy presentation of claim against the
   estate of a decedent based on negotiable notes, it was not
   error for the probate court to require the claimant to pay the
   referee's fee (CL 1948, §§ 708.4, 708.18).

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted September 23, 1949. (Docket No. 82, Cal-
endar No. 44,520.) Decided December 7, 1949. Re-
hearing denied January 9, 1950.

In the matter of the estate of Thomas H. Booth,
deceased. Columbia Steel & Shafting Company,
presented a tardy claim. Claim allowed with costs

against claimant. In circuit court claim allowed with costs and reversing probate court on matter of charging referee's fees to claimant. Estate appeals. Modified and affirmed.

*Alexis J. Rogoski,* for claimant.

*Robert A. Carr* and *George H. Cross,* for estate.

SHARPE, C. J. This is an appeal by the estate of Thomas H. Booth, deceased, from a judgment allowing the claim of Columbia Steel & Shafting Company in the sum of $45,639.73.

The deceased was employed by the Pittsburgh Shafting Company of Detroit from 1912 until its partial dissolution in 1921 at which time he was employed by Columbia Steel & Shafting Company and remained in its employ until his death.

The claimant, Columbia Steel & Shafting Company, bases its claim upon the following promissory notes:

"Detroit, Michigan      June 23, 1920      $13,000.00
"On Demand .... after date I promise to pay to the Order of Pittsburgh Shafting Co. of Detroit
"Thirteen Thousand .. ................... Dollars at THEIR OFFICE DETROIT, MICHIGAN, WITH INTEREST AT 6 PER CENT. PER ANNUM UNTIL DUE AND SEVEN PER CENT. PER ANNUM THEREAFTER UNTIL PAID.
"VALUE RECEIVED            THOMAS H. BOOTH"

On the back of the above note there are $2.60 worth of Federal stamps and the following:

"Pay to the order of
"Columbia Steel & Shafting Company
   "PITTSBURGH SHAFTING Co. of Detroit
      "W. C. SCHRAGE
         "President"

"$1,318.66            Detroit, Mich. February 1, 1921
"On Demand .... After Date I Promise to Pay to
"Columbia Steel & Shafting Company .. or Order
"One Thousand Three Hundred and Eighteen
Dollars and Sixty Six Cents ............ Dollars
At Their Office in Pittsburgh, Pa. ...........
"Value Received With 6 per cent. Interest per an-
num.
"No.            Due            Thomas H. Booth"

The above notes were renewed in 1938 and copies
of the same read as follows:

"$13,000.00            Pittsburgh, Pa. April 19, 1938
"On demand After Date I Promise to Pay to The
Order of
        "Columbia Steel & Shafting Company
"Thirteen thousand and 00/100 ......... Dollars
"At Columbia Steel & Shafting Company Office,
Carnegie, Pa.
"Without defalcation for value received.
"With interest at 6% from
        "June 23, 1920
"No.            Due            T. H. Booth

"$1,318.66            Pittsburgh, Pa. April 18, 1938
"On demand After Date I Promise to Pay to The
Order of
        "Columbia Steel & Shafting Company
"One Thousand three hundred eighteen and
        "66/100 ............ ... .. ........... Dollars
"At Columbia Steel & Shafting Company Office,
Carnegie, Pa.
"Without defalcation for value received.
"With interest at 6% from
        "February 1, 1921 .
"No. .... Due ......            T. H. Booth"

In support of the claim, the following exhibits
5 and 7 were offered and received in evidence. Ex-
hibit 5 reads in part:

"March 14, 1945

"Mr. T. H. Booth
1454 Peck Street
Muskegon, Michigan
*"Dear Mr. Booth:*
"In connection with the examination of our Accounts as at December 31, 1944, kindly certify to our auditors, Messrs. Price, Waterhouse & Company, Gulf Building, Pittsburgh, Pennsylvania, regarding the notes and advances due from you. According to our records, the following notes represent your indebtedness on account of cash advances.

| Date of Note | Date Due | Interest Rate | | Amount of Note |
|---|---|---|---|---|
| 4/19/38 | Demand | 6% | F2 | $13,000.00 |
| 4/19/38 | Demand | 6% | | 1,318.66 |
| | | Total Notes | | 14,318.66 |
| Cash Advances | | | | 6,701.82 |
| | | | F2 | 21,020.48 |

"An addressed stamped envelope is enclosed for your reply.
"Very truly yours,
"Columbia Steel & Shafting Company
"E. L. Parker,
President
"Certified to be correct:
"T. H. Booth."

Exhibit 7 reads, in part, as follows:

"Letter of Attorney
"Know All Men by These Presents, That we, Thomas H. Booth and Marjorie Koons Booth, his wife, of Muskegon, Michigan, do make, constitute and appoint E. L. Parker and George A. Devey, of the city of Pittsburgh, county of Alleghany and Commonwealth of Pennsylvania, and each of them, individually or jointly, our true and lawful attorneys,

for each of us individually, and for us jointly, to do any and all things which we, or either or both of us, could do if personally present, in connection with any and all shares of stock owned by us, or either of us, in the Pittsburgh Cold Finished Steel Corporation, a corporation of the State of Delaware, and with respect to any moneys owing by us or either of us to Columbia Steel & Shafting Co., a corporation of the Commonwealth of Pennsylvania; hereby ratifying and confirming all that our said attorneys and each of them may do in the premises.

"Witness the due execution hereof the 22d day of March, 1945.

"Witness:

Susie A. Nichols
F. Herbert Bartlett

"Thomas H. Booth        (Seal)
"Marjorie Koon Booth    (Seal)"

The estate appeals and urges that the notes executed in 1938 are without consideration as there was no valid transfer of the notes from Pittsburgh Shafting Company to Columbia Steel & Shafting Company. In support of this claim it is urged that claimant did not prove a proper indorsement of the 1920 promissory note to claimant; and that the bill of sale did not convey the interest of the Pittsburgh Shafting Company to claimant for the reasons that claimant did not prove authority of the proper officers to make the transfer of the assets. We find no merit in this claim as the minutes of the stockholders' and directors' meetings of the Pittsburgh Shafting Company held January 20, 1921, authorize its officers to make a legal transfer of all of the assets of Pittsburgh Shafting Company, other than $5,000 in cash, including the notes in question to Columbia Steel & Shafting Company. Decedent was a stockholder and director of Pittsburgh Shafting Company and participated in the formal corporate action by which the transfer was made. More-

over, decedent by executing the 1938 notes recognized the validity of the transfer from Pittsburgh Shafting Company to Columbia Steel & Shafting Company.

Under the negotiable instruments law every negotiable instrument is deemed prima facie to have been issued for valuable consideration.

"Every negotiable instrument is deemed prima facie to have been issued for valuable consideration; and every person whose signature appears thereon to have become a party thereto for value." CL 1948, § 439.26 (Stat Ann § 19.66).

In the case at bar the record contains no proof to overcome the presumption of consideration. We, therefore, reject the claim of failure of consideration.

The principal question is whether or not claimant's exhibits 5 and 7 constitute a sufficient acknowledgment by Booth of his indebtedness to claimant to remove the bar of the statute of limitations.

"In actions founded upon contract express or implied, no acknowledgment or promise shall be evidence of a continuing contract, whereby to take a case out of the provisions of this chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing signed by the party to be charged thereby." CL 1948, § 609.21 (Stat Ann § 27.613).

Under the above statute no set form of words is necessary to constitute a sufficient acknowledgment of indebtedness to take a claim out of the statute of limitations. The estate claims that exhibit 5, relied upon by claimant, contains neither an admission of indebtedness nor a promise to pay. Booth certified that the items set forth in exhibit 5 correctly represented the indebtedness due from him to

claimant without limitation or qualification, nor did he question the amount of the indebtedness. The intent of Booth in acknowledging the correctness of the statement is an important factor in determining whether there was a promise to pay a present existing debt.

Booth was not a novice in business affairs. He had been director of a large business corporation and as such was conversant with business affairs. In our opinion his acknowledgment is an admission as to the existence of a debt which acknowledgment was made subsequent to the running of the statute of limitations and at least raises a presumption of an implied promise to pay the obligations. In the case at bar there was no showing to rebut the presumption. In our opinion the certification of the correctness of the statement of account together with the "Letters of Attorney" are sufficient to toll the running of the statute of limitations.

It is urged that the 1938 notes are usurious. It is to be noted that the amounts of the 1938 notes are the same as in the 1920 and 1921 notes; and that the 1938 notes draw interest from the respective dates of the original notes. In such a case the inference is that the last notes were renewals of the former notes and that no interest had been paid on the original notes. The fact that each renewal note draws interest at 6 per cent. from a date prior to the date of the note itself, under the circumstances of this case, does not render the renewal notes usurious.

It is also urged that the trial court was in error in holding that the fees of the referee are not chargeable to claimant. It appears that claimant filed a tardy claim on September 29, 1947, subsequent to the filing of an order closing hearing on claims in the probate court. The probate court entered an order providing that claimant pay the referee's fee

of $550 as part of the costs as is provided in CL 1948, § 708.18 (Stat Ann 1943 Rev § 27.3178 [428]), which reads in part:

"That all costs and charges resulting from said application and the proceedings thereon had in probate court, or before the referee shall be paid by the party making the application. After 18 months following the time for presentation of claims as originally fixed by the probate court, no claim against the estate shall be received and considered unless the probate court, upon prior notice to the fiduciary and after hearing, shall determine that the failure of such creditor to present his claim sooner was not due to any fault or neglect on the part of such creditor. Five days' notice by personal service of the time and place of the hearing on any tardy claim shall be given to the fiduciary."

CL 1948, § 708.4 (Stat Ann 1943 Rev § 27.3178 [414]), provides:

"Costs in the discretion of the probate court may be allowed the prevailing party in connection with any contested claim, which costs, if so allowed by the court, shall include witness fees, except for the claimant and the fiduciary if they appear as witnesses, taxed at the same rate as in cases in circuit court, and the fees of the referee, if any shall be included, and the court in its discretion may allow the prevailing party an attorney fee of not exceeding $25.00 in connection with any 1 claim. The order of the court allowing or disallowing such claim shall specify whether costs are allowed, and, if so, shall fix the amount thereof in accordance with this section. In the event that costs are allowed against an estate, the fiduciary shall pay the same as a part of the expenses of administration."

Under the above quoted sections it was not error for the probate court to enter an order requiring the claimant to pay the referee's fee. The trial court.

was in error in holding that the fees of the referee are not chargeable to claimant. The judgment is affirmed as modified. Costs to appellee.

BUSHNELL, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.